IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TERESA MAGUIRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| vs. ) | |
| ) | FILE No. 5:19-cv-259 |
| LEON SPRINGS ASSOCIATES, LLC, ) | |
| ) | |
| Defendants. ) | |

## CONSENT DECREE

This Consent Decree ("Agreement") is made and entered into by and between Teresa Maguire ("Plaintiff") and Leon Springs Associates, LLC ("Defendant"). The signatories to this Agreement may be referred to individually as a "Party" or jointly as the "Parties." This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

### Preamble

**WHEREAS**, on or about March 15, 2019, Plaintiff filed an action in the United States District Court for the Western District of Texas, entitled *Teresa Maguire v. Leon Springs Associates, LLC*, Case No: 5:19-cv-259 ("Action"), wherein Plaintiff asserted claims for injunctive relief against Defendant based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq.* ("ADA") and related claims for relief respecting the real property located at or about 4400 Fredericksburg Road, Suite 101, San Antonio, TX 78201, Bexar County Property Appraiser's Parcel ID: 342171 ("Facility");

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation;

**WHEREAS**, the Parties have agreed to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendant shall be fully, forever, and finally released; and

NOW, THEREFORE, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Attorney's Fees and Costs**

    1.1   Plaintiff and Defendant shall execute this Agreement.

    1.2   Within 7 days of the execution of this Agreement, Defendant agrees to pay a total settlement amount of **$4,800.00,** which collectively represents Plaintiff's attorney's fees and costs of $4,500.00 and a reinspection fee of $300.00 ("Settlement Payment"). All payments shall be made payable to "**Kurz Law Group, LLC Trust Account**," with an indication that the check is issued "**in settlement of Case No. 5:19-cv-259**."

    1.3   Within 5 days of the execution of this Agreement, Plaintiff shall prepare and circulate a Joint Stipulation to Approve Consent Decree and Dismissal of Defendant with Prejudice to be distributed to all Parties for execution.

    1.4   Within 5 days of receipt of payment referenced in 1.2 above, Plaintiff shall file the Joint Stipulation to Approve Consent Decree and Dismissal of Defendant with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

    1.5   Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action with prejudice as set forth above. Except as set forth herein, each Party shall be responsible for payment of her or its own litigation expenses, costs and attorneys' fees incurred in connection with the preparation and execution of this Agreement.

    1.6   Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Settlement Payment hereunder. Plaintiff and Plaintiff's Counsel expressly acknowledge that Defendant has not made any representations regarding the tax consequences of any payment received pursuant to this Agreement.

2. **Alterations or Modifications to the Facilities**

    2.1   The Parties hereto acknowledge and stipulate that Defendant shall modify or alter the items expressly identified by and in the manner specified in Exhibit "A." The repairs or modifications identified in Exhibit "A" shall be completed in all respects no later than six (6) months ("Completion Date") from the effective date of the execution of this Agreement, which shall be the date

indicated by the last signatory to the Agreement ("Effective Date"). The time period for Completion by Defendant shall be subject to acts of God, force majeure, or events beyond the control of Defendant, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of such unforeseen circumstances, the Completion Date of the alterations or modifications in Exhibit "A" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendant provides notice to Plaintiff's Counsel prior to the original completion date set forth above.

  2.2 Upon completion of the removal of the barriers and the alterations and modifications set forth in Exhibit "A", Defendant shall provide written notice by certified or registered mail or via e-mail to Plaintiff's Counsel of such completion.

  2.3 **Right to Inspection:** The Parties stipulate that (1) within 10 days of receipt by Plaintiff's Counsel of notice of the completion of the alterations or modifications described in Exhibit "A" or (2) expiration of the Completion Date set forth in Section 2.1 above, whichever is sooner, Plaintiff may inspect the Facility to ensure that Defendant has completed the repairs or modifications described in Exhibit "A." Defendant shall provide Plaintiff or her representative reasonable access to the Facility to verify completion of the work described in Exhibit "A" during such time period.

  2.4 If the inspection contemplated in Section 2.3 reveals that any of the alterations or modifications described in Exhibit "A" have not been performed in a manner that does not materially comply with Exhibit "A," Plaintiff shall have the right to enforce this Agreement pursuant to Section 3.1.

  2.5 It is agreed by all Parties that upon completion of the alterations and modifications as set forth in Exhibit "A," the Facility will be fully compliant with the ADA pursuant to the readily achievable standard.

**3.** **Enforcement Provisions**

  3.1 In the event the alterations and modifications described in Exhibit "A" are not completed in the manner set forth in Exhibit "A" by the Completion Date (as originally set forth or as extended), Plaintiff shall be entitled to file an action to obtain specific performance of this Agreement against Defendant or otherwise enforce the requirements of this Agreement, after delivery of a notice of default to Defendant and Defendant's failure to cure the default within 30 days of receiving such notice of default.

3.2 In any action to enforce this Agreement, the Parties agree Defendant's failure to timely modify or alter the Facility as set forth in Section 2 after notice and an opportunity to cure pursuant to Section 3.1 shall constitute a material breach of this Agreement.

**4.   Compromise**

4.1 The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in Section 5.1 below). The Released Parties expressly deny any such liability, wrongdoing, or responsibility.

**5.   Mutual Release**

5.1 In exchange for the good and valuable consideration set forth herein the sufficiency of which is hereby acknowledged, the Parties hereto mutually release each other, or through their corporate capacity, agents, employees, family members, partners, successors, assigns, and heirs, along with anyone claiming by or through them, jointly and severally (collectively the "Releasing Parties") hereby release, acquit, satisfy and discharge the other, and along with any and all of their predecessors, agents, employees, assigns, heirs, officers, directors, shareholders, members, affiliated entities, and any entity or person related to them (hereinafter the "Released Parties"), jointly and severally, from any and all claims, demands, liabilities, debts, judgments, damages, expenses, actions, causes of action or suits of any kind which the Releasing Parties may have, may have had, or may hereafter acquire or raise against the Released Parties, including but not limited to this Action, the subject litigation arising under Title III of the ADA, including all claims by the Releasing Parties for attorneys' fees and costs, expert fees, litigation expenses, or any other amount, fee, and/or cost ( except the attorneys' fees and costs required to be paid by the Defendant pursuant to Paragraph 1 of this Agreement and any attorney's fees and costs incurred in the any future enforcement of this Agreement). This Release is strictly limited to the Facility.

5.2 As a material inducement for Defendant to enter into this Agreement, Plaintiff represents and warrants that she is not aware of any pending tort, contract, or other legal claims against Defendant, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

5.3 Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which she might be entitled have been assigned or transferred to any other person, firm,

4

or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

## 6. Notice

6.1   Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered by hand delivery, certified mail, return receipt requested, or electronic mail, as follows:

To Defendant:
**LEON SPRINGS ASSOCIATES, LLC**
c/o Ryan C. Reed , Esq.
Pulman, Cappuccio & Pullen, LLP
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
rreed@pulmanlaw.com

To Plaintiff:
**TERESA MAGUIRE**
Dennis R. Kurz, Esq.
Kurz Law Group, LLC
1640 Powers Ferry Road, SE
Building 17, Suite 200
Marietta, GA 30067
dennis@kurzlawgroup.com

6.2   A Party may change such address for the purpose of this paragraph by giving timely written notice of such change to all other Parties to this Agreement in the manner provided in this paragraph.

## 7. Free Will

7.1   The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

8. **<u>Miscellaneous Terms and Conditions</u>**

  8.1 This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein.

  8.2 This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

  8.3 This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

  8.4 This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

  8.5 If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

  8.6 The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

  8.7 Plaintiff represents that, other than the Action, she has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendant with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facility, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on her behalf, she will use her best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

  8.8 The Parties agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

8.9  In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs incurred in connection with such enforcement action or proceeding.

8.10  The Parties agree that any ambiguities in this Agreement shall not be construed against the drafter of the Agreement.

8.11  The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding paragraph 1 are incorporated as a material part of this Agreement.

8.12  This Agreement is entered into in, and shall be governed by and construed and interpreted in accordance with the substantive laws of the State of Texas. Any action or proceeding to enforce this Agreement shall be brought in a court situated in San Antonio, Bexar County, Texas.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date(s) set forth below:

**PLAINTIFF, TERESA MAGUIRE**

November 7th, 2019                    _____
                                      **Teresa Maguire**

c/o Dennis R. Kurz, Esq.
Kurz Law Group, LLC
1640 Powers Ferry Road, SE
Building 17, Suite 200
Marietta, GA 30067
dennis@kurzlawgroup.com

**DEFENDANT, LEON SPRINGS ASSOCIATES, LLC**

November 6, 2019                      _____
                                      By: Coury Jacob

                                      Title: Authorized Agent of Leon Spring Associates, LLC

c/o Ryan C. Reed, Esq.
Pulman, Cappuccio & Pullen, LLP
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
rreed@pulmanlaw.com

7

# EXHIBIT A

For purposes of this Agreement, "2010 ADAAG standards" refers to the ADA Accessibility Guidelines 28 C.F.R. Pt. 36, App. A.

The following modifications are to be made by Defendant Leon Springs Associates, LLC:

**THE NUMBERING SYSTEM THAT FOLLOWS REFERES TO THE NUMBERS ON THE SITE PLAN THAT IS ATTACHED AS PART OF THIS SCOPE.**

1. **In front of RAC** – raise the asphalt so *slope in all the ADA spaces and access isle is no more than 2%* and feather out toward sidewalk, correct the gap from asphalt to sidewalk, reset the hashed area so that it is in line with the side of the sidewalk ramp towards Golden Kirin and hash all the way to the end of curb in other direction (leave ramp as is)

   Create one VAN ADA parking space immediately to the right (facing RAC) of the expanded hashed access isle with no parking hashed area to the right of this space. Add 2 new ADA parking spaces which will be adjacent to the VAN ADA space. Access from these two new ADA spaces be via a new concrete ramp which will be constructed outside of the sidewalk SLOPE NO GREATER THAN 8% ON THE RAMP and go out into the parking lot with angles and slope on each side and the new ADA spaces will be set further out into the parking space with car stops and ADA signs set where needed to accommodate the new concrete ramp and be at appropriate height. CONSIDER USING PLASTIC POLES FOR THE TWO NEW SPACES.

   *SEE THE DIAGRAM FOR THIS ITEM #1*

2. **Across from H&R Block / Harbor Buffet** – leave the current ramp, correct the gap/grade of asphalt at sidewalk, remove the ADA sign in the parking lot

3. **Across from H&R Block / Harbor Buffet** – sealcoat over striped accessible route

4. **Across from H&R Block / Harbor Buffet** – sealcoat over striped access isle and convert to regular parking space. Will require a new bumper stop.

5. **Across from Planet Fitness** – do overlay of asphalt, create ramp to island hashed route area, add additional ADA space (it is ok for the 2nd space to walk behind the 1st to get to the access isle) make sure the hashed areas for the isle and the route are the correct widths (3'W minimum for route and 8'W for the isle – current route is too narrow).

   *SEE THE DIAGRAM FOR THIS ITEM #5*

6. **Across from Rainbow** – correct the gap from the asphalt to sidewalk, re-create the route along the island curb at the light pole and restripe, keep ADA parking spaces. Make sure the access isle is at least 8' wide and the spaces are at least 8' wide. The spaces closest to the island are currently too narrow and the isle is wider than it needs to be. Make sure to level the asphalt to the concrete edges.

7. **Across from Family Dollar** – Eliminate this ADA parking space – seal coat over the hashed areas and route to sidewalk. Replace access isle with a regular parking space – will need new bumper stop.

8. **Across from Jackson Lujan** – keep current ADA parking spaces and add two additional signs on back sides to create two additional spaces and an extended access isle. Isle to be 8' minimum width. 2 of the spaces to be VAN and the others normal ADA HC spaces.

9. **Across from Jackson Lujan** – make sure hashed route lines up with the entry to the ramp.

10. **At Golden Kirin** - remove the single ADA sign at Golden Kirin and install a "deliveries only" sign. The hashed area on the side of the ramp should be removed (seal coated over) and used for the additional width that may be needed for the work at Rent a Center. The concrete ramp remains as is.





